MOSHER, Executor of BRIGGS, against HUBBARD.

MOSHER
v.
HUBBARD.

*A., the adminis-
trator of an in-
testate estate,
under an order
of the surrogate,
sold certain land
of the intestate,
and took a bond
and mortgage
from the pur-
chaser to se-
cure the consid-
eration; he af-
terwards drew
an order upon
the purchaser in
favour of B., for
part of a debt
due from his in-
testate to B.,
stating in the
order that the
amount should
be credited on
the bond and
mortgage; but
the purchaser
refused to pay
the order, as the
bond and mort-
gage had been
assigned to C.;
it was held, that
A., having re-
ceived the full
amount of the
bond and mort-
gage from the
assignee, and
being credited
for the amount
of the debt to
B. in his account
with the surro-
gate, was liable
in his individual
capacity to B.,
for the amount
of the order, as
for money had
and received to
his use.
In an action to
recover the a-
mount of an or-
der which had
been drawn by
the defendant,
but which the
drawee had re-
fused to pay,
the defendant
pleaded the sta-
tute of limita-
tions, and a wit-
ness testified
that after the
lapse of six
years, he pre-
sented the order
to the defendant,
who did not pre-*

THIS was an action of *assumpsit* upon the common money-counts. The defendant pleaded *non assumpsit* and *non assumpsit infra sex annos*. The cause was tried at the *Rensselaer* circuit, in *June*, 1816.

At the trial the plaintiff gave in evidence the following order: "Pay *William Briggs* 110 dollars, on sight, and the same shall be passed to your credit, on a bond and mortgage which I hold with *Jesse Potter*, executed by you. Your Friend, *Ruggles Hubbard.* To Mr. *Daniel Eldred. Troy, November* 7th, 1808."

The bond and mortgage referred to in the order were dated the 19th *October*, 1807, and were assigned by the defendant and *Jesse Potter*, the mortgagees, to *Thomas Sampson* and *Henry Warren*, by assignment, dated the 27th *May*, 1808; but by a memorandum on the mortgage, the assignment was stated to have been delivered on the 15th *December*, 1808, *Daniel Eldred* testified that the order in question was presented to him by the plaintiff's testator in his lifetime, but that he had refused to pay it, because the bond and mortgage had been assigned to *Sampson* and *Warren*, and they had told him that he must pay no more to the defendant; that he had paid up the whole amount of the bond and mortgage, and that the order was never paid out of it.

*Jonathan Brown* testified that the bond and mortgage were given to the defendant and *Jesse Potter*, to secure the consideration for the real estate of *John Potter*, sold by them under the Surrogate's order: that the order in question was given in part payment of a debt due from the estate of *John Potter* to the plaintiff's testator, and not for an individual debt of the defendant, as the witness had understood from the testator in his lifetime. The witness also testified that he had examined an account on file in the Surrogate's office, endorsed by the defendant, after the date of the order, in which was stated an account

*tend but that the money was due, and said that he did not recollect paying it, but that he would examine his papers, and if he had paid it he would write to the [wi]tness, who, however, never received any communication from the defendant upon the subject; it was held, that this was sufficient evidence from which to imply a promise by the defendant to pay the money, if he should find that it had not been paid; and thus to take the case out of the statute of limitations.*

in favour of the plaintiff's testator, against the estate of *Potter*, of about 190 dollars, stated to be receipted and allowed to the defendant by the surrogate. The witness also testified that in *April*, 1815, he called on the defendant in *Albany*, at the request of the plaintiff, and showed him the order in question, which the defendant admitted that he had given. The witness then told the defendant that the plaintiff had found the order among the papers of his testator, which the witness had understood from the testator, before his death, had been lost some time; that he had called upon *Eldred*, who said that he had not paid it, and who wanted to know whether the defendant had paid it, and if not, he wished to have it settled. The witness further stated to the defendant that the reason why *Eldred* had not paid the order was, probably, because the bond and mortgage had been assigned about the time that the order was given; to which the defendant replied, that he supposed that that was the reason. The witness then asked the defendant if he had any recollection of paying it, but the defendant answered that he had not; and on the witness asking what should be done about it, the defendant said that he was in great haste, but that he would examine his papers on his return to *New-York*, and that if he found that he had paid the order, he would write to the witness; but the witness testified that he had never received any letter or communication from the defendant upon the subject; and that the defendant did not pretend but that the money was justly due to the estate of the plaintiff's testator.

The jury, by the direction of the judge, found a verdict for the plaintiff.

A motion was now made to set aside the verdict, and for a new trial.

*Mitchill*, for the defendant, contended, 1. That the plaintiffs were barred by the statute of limitations.

2. That there was no sufficient consideration proved to support an *assumpsit* by the defendant to pay the debt out of his own proper funds, it being the debt of the intestate, *Potter*; and the order itself, without the words, "value received," was no evidence of a consideration.[*] An executor or administrator can give no preference to one debt over another of equal degree, except by payment, or confessing a judgment.

* *Rand v. Hughes*, 7 *Term Rep.* 350. *note. Ballard v. Walker*, 3 *Johns. Cas.* 65. *Sears v. Brinks*, 3 *Johns. Rep.* 3—4. 5 *Johns. Rep.* 245.

NEW YORK,
October, 1816.

MOSHER
v.
HUBBARD.

*1 N. R. L. 78.
5 East, 10.
Johns. Rep. 214.
Johns. Rep. 33.

† 2 Caines' Rep.
344. 11 Johns.
Rep. 180. 7 East's
Rep. 359. 2 H.
Bl. 609.

‡ 4 Johns. Rep.
461.

3. That there was not a sufficient memorandum in writing, within the eleventh section of the statute of frauds, to charge the defendant in his own right.*

4. That the defendant having effects in the hands of the drawee, notice of the non-payment of the order was necessary.†

*Foot*, contra, relied on the case of *Sluby* v. *Champlin*,‡ to show that the evidence of a promise by the defendant was sufficient to take the case out of the statute of limitations. And he contended that, at any rate, there was sufficient evidence to enable the plaintiff to recover on the count for money had and received.

*Per Curiam.* Several questions were raised and discussed on the argument, which it will be unnecessary to notice, as the facts in the case will, in the opinion of the court, support the recovery, on the count for money had and received. The order drawn by the defendant upon *Eldred*, in favour of *Briggs*, the testator, was, as it imports upon the face of it, to be credited upon a bond and mortgage, given by *Eldred* to the defendant and *Jesse Potter*. This bond and mortgage was given to them, as the administrators of *John Potter*, deceased, for lands belonging to his estate, and sold under an order of the surrogate; and the order drawn by the defendant was in part payment of a debt due from *John Potter* to the testator, *William Briggs*. It is very evident, that this order never was paid by *Eldred*, nor credited upon the bond and mortgage, as was intended at the time it was drawn; and the defendant afterwards transferred this bond and mortgage to *Sampson* and *Warren*, and received the full amount thereof, without deducting the order; and in the account subsequently rendered to, and settled before, the surrogate by the defendant, of his administration of *Potter's* estate, he received a credit for the debt due to *Briggs*, in part payment of which the order was drawn. These facts show conclusively, that the money has come into the defendant's hands, and will warrant the conclusion, that he received it to the use of *William Briggs*. The settlement of his account, and claiming a credit for the debt paid to *Briggs*, shows that the defendant considered the money appropriated to the use of *Briggs*, and not as money in his hands, for the benefit of the creditors of *Potter* generally. The plaintiff is, therefore, entitled to recover, unless barred by

the statute of limitations; and, in the opinion of the court, the evidence is sufficient to take the case out of the statute. In the conversation stated to have taken place between the defendant and *Brown*, it was not intimated by the defendant that he intended to avail himself of the statute, but the only question in his mind seemed to be, whether the order had not been paid; and he promised to examine his papers, and if he found he had paid the order, he was to write to the witness; but, as the witness testified, he never has written. This was sufficient to raise an implied promise to pay the money, unless, on examination, it should be found that the order had been paid, and there is no evidence whatever of any payment. The motion for a new trial must, accordingly, be denied.

Motion denied.